Case number 16-7128, Hensel Phelps Construction Co appellate v. Cooper Carry Inc. Ms. Stetson for the appellate, Mr. Shoemaker for the appellate. Good morning, Your Honors, and may it please the Court. My name is Kate Stetson. I represent the appellant, Hensel Phelps Construction Company. This is a case presenting two different and classic contract law issues. Issue number one is whether the contract between Hensel is whether the indemnity clause in that contract covers the $8.5 or so million that Hensel Phelps had to expend in order to remedy Cooper Carry's errors. I have difficulty with your outset position. If one accepts your first statement of the issue, you're in better position than I think is the appropriate question. The question is whether or not the plaintiff had a cause of action earlier than the statute of limitations, period, which may or may not involve a unitary or phased construction project. Judge Silverman, I think that's true to a point. I think, though, that the parties and the district court itself actually would agree that if this contract was a unitary contract that the time for filing a lawsuit hadn't run. So if you look at Judge Leon's opinion I looked at your opponent's brief and they focused not on unitary versus divisible. They focused on when you had a cause of action. And indeed, as I look at the cases, it's sort of backwards that the courts look at unitary or divisible in order to determine whether there was an earlier cause of action. But if you have, wouldn't you agree if a contract specifically states that there is an earlier cause of action, it wouldn't be relevant as to whether it was a unitary or divisible contract? No, I think, Judge Silverman, the question about whether there's a cause of action actually is inextricably tied with the unitary contract question, which is why I framed it this way. Well, let's say we have a contract that clearly is divisible. Nevertheless, there's a specific provision indicating that there's a right of cause of action at an early stage. Well, Judge Silverman, if the contract is divisible and there is a statement in the contract specifying that a cause of action may arise at an earlier stage, that actually is a quite different question than the one presented here. No, no, no. He said if it's unitary. He said if it's unitary. Oh, I misunderstood. I thought you said it was a divisible contract presenting an earlier cause of action. Thank you, my colleague. Now I'm talking about the contract is unitary, which is your theory, but there is a statement that there is an earlier cause of action. In that event, I think, Your Honor, the contract wouldn't be unitary. I don't think those two things can coexist, but let me explain why, if I could. Judge Leon's opinion itself says, and this is Joint Appendix 377 to 378, when you have a unitary contract, first breach, so this notion of when the cause of action arises, first breach doesn't occur until the contract is substantially complete. And this is Judge Leon's quote. A unitary contract cannot be breached partway through the construction process, even where there are errors. I understand why you're quarreling with Judge Leon's opinion rather than my hypothetical. Judge Silberman, I think it's because your hypothetical presents a question that can't be answered respectfully. I think you're right. I think you're having a very difficult time answering it. The idea that a contract is unitary, if that is in fact what the contract says, which is what this contract is, it can't provide for an earlier cause of action. The whole idea behind a unitary contract. As a matter of fact, doesn't this contract specifically provide that it can be an earlier cause of action? Or is it in the exact language it says that it can be an arbitration process or litigation earlier? Judge Silberman, it does make reference generally to litigation. I think the problem with that when you look at whether a contract is unitary. Is this an entire contract? What is the contract for? So, for example, Joint Appendix 17 and 15, what those pages of the Joint Appendix say is this is a lump sum contract for a course of work including completion and construction of the project. You're avoiding my concern with that specific language. And furthermore, which really puzzles me that you did not respond to in the reply brief. What about the claim narrative that your client presented which specifically states that the breach of contract took place, the breach of standard of care took place at an early stage? Judge Silberman, that in fact is the fighting issue in this case. No, but that was your own client's claim narrative. I understand. The error, though, took place at an earlier stage. But in that claim narrative, you'll also see, among other things, that Cooper Carey attempted to remedy the error. It attempted to remedy the error, among other ways, by actually going back to the D.C. permitting authority and asking for an exception to the fire code that the D.C. authority had quoted. If that error had been remedied, which, by the way, is an express instruction in this contract that that be permitted to take place in this unitary course of performance. But that would be always true that somebody could remedy a breach. That's got nothing to do with whether a breach took place. I think, Your Honor, we're having a debate between the existence of an error or sometimes what's called a default under the contract and the existence of a breach. But the entire question in this case is if first breach only occurs on substantial completion, which is D.C. law, when it comes to a unitary contract, then the error that is committed earlier is not yet viewed as a breach. I apologize. Whatever D.C. law deals with in a default situation, this contract is rather specific. And the claim narrative said the breach took place when the original documents were provided by the architect. Your Honor, the claim narrative enumerates a number of errors that took place, some of them dating back to 2008, which is, of course, well before Hensel Phelps was even involved, some of them extending to 2012 and 2013. That's part of the problem that I think you're struggling with, which is when you are dealing with a multi-multimillion dollar contract like this, there are going to be errors and defaults along the way. That's why Section 5 of the parties' agreement actually provides for a process so that the parties can attempt to remedy those errors and those defaults before we get to the point of litigation. But one of the other things the claim narrative says, by the way, is there are 48 different deliverables in this contract, 48. And those deliverables, by the way, are divided into smaller categories as well. So if there is an error in a design, for example, in 2008, having to do with a preliminary design relating to the fire code, does the error then begin to, does the contract breach term begin to run from 2008? Does it begin to run from the next construction design document that incorporates that error? How about the third one after that? The problem with this case is that All of those Well, it's interesting that my opponent says that because you will look in vain, actually, in Judge Leon's opinion for the date that the breach of contract claim began to run. And I submit that's because the district judge was struggling with the same issue as well. At one point he says the district, or that the date began to run from when Hensel Phelps accepted the designs. But, of course, that was just when Hensel Phelps stepped into Marriott's shoes. That date has no significance for a breach of contract claim. In other circumstances, Judge Leon says So in your view, the breach of contract was in 2008? No. In my view, the breach of contract was in April 1st of 2014. And the reason that that is the date is because that is the date that everyone understands that the Certificate of Substantial Completion issued. And that's, you can find that in our complaint at Joint Appendix 9. Now, I'd like to ask you a question about public policy. I was really mystified by the amicus brief and your arguments on public policy since it seemed to me this could easily be solved by contract, including the tolling agreement. So, in other words, contractors, who are, of course, the big guys, could always contract with the architect to make sure that there wasn't a cause of action until the end of the contract, under the construction or a tolling agreement, one or the other. This can easily be done by contract. So why do you want the courts to step in and help you solve a problem when you obviously have capacity to contract as you wish? To begin with, the question whether this contract is a unitary contract is, I think, separate from whether the parties also could have provided a different way to make sure that the claims don't accrue. No, I'm talking about your public policy argument. I understand that. But when you were talking about a contract for provision of services which runs through, and this is what Joint Appendix 17 says, completion and construction of the project, these parties understood that this was a unitary contract. D.C. law provides that this is a unitary contract. Counsel, I'm only asking about the public policy argument, which you make in your brief in which the amicus brief. That's correct. And why am I incorrect in saying, gee, why are we worried about public policy when the construction companies can always write a contract that solves their problem? I think, Your Honor, the presence of the amicus itself indicates the scope of this problem. Until this case, everyone understood, without regard to tolling agreements, which, by the way, of course, require agreement from all sides, which, according to Cooper Carey, apparently would have to be entered into with every single identified error during the entire course of a contract. The public policy governing the idea of the unitary contract already has been in place. That's why the amicus came in this case in the first instance, to say if Judge Leon's opinion is right, if contractors actually have to sue for breach or somehow enter into tolling agreement after tolling agreement or sue and amend and amend and stay until the end of the project. One tolling agreement would do it. I could write it back in my office in 36 seconds. But, Judge Silberman, the point of our public policy argument is that when you look at the question about when a statute of limitations starts to run and you look at the notion of a unitary contract, one of the things that you ask yourself is what did the parties intend when they entered into this contract? Our point is when you look at the four corners of this contract, not what might have been or what they might have written, but with the four corners of this contract, you come away with the understanding that this is a unitary form of contract. And isn't it always true that in a contract case, when we look at a contract and we think, did this or did this not provide for the situation, we look up to the sky and think, gosh, I wish they had expressly anticipated this and written it in. I mean, that's endemic in contract law, that we're going to have situations where it could have been solved easily, but it wasn't and it isn't because of what you say about understandings and background law. And that's why I think the D.C. courts consistently have said, when you look at this contract, when you're trying to figure out after the fact when an issue comes up about whether this document is unitary or divisible, what do you look at? You look at lump sum, you look at whether this is the whole agreement, you look at whether it was entered into at different times. All of those indicia point to the same thing. And whether the stages, the compensation and a deliverable are matched, which as I read the record, they aren't here. What do you think the reference to litigation that you and Judge Silverman were referring to means? Keep performing even if there's litigation about what, under your theory? I think because it's such a general statement, it really could mean any number of things. It could mean, for example, if there is a dispute implicating a subcontractor under the contract that has implications for payment, when payment is made and to whom, provided, I assume, that Article V's proscriptions and prescriptions in terms of who gets to suspend and when they have to notify and terminate, provided that all of those things have been taken care of, you could imagine a circumstance where there's a payment dispute that gives rise to litigation, but there is still an obligation on one or the other party to perform. But that single phrase, the idea that this contemplates litigation, therefore this unitary contract somehow becomes divisible, that is completely unsupported by the rest of this document. Counsel, you understand. My understanding is it doesn't have to be divisible, that it's an artificial division in this case to talk about unitary and divisible, that courts do that when there's no other indication as to whether the cause of action is earlier. Judge Silverman, I'm not sure that that's accurate because the way that courts approach the unitary versus divisible issue is to look at the contract for all of those indicia I mentioned. That's what the Holliday-Holmes case says. That's what the Durham v. Howard case says. But there is not indication of other indications of cause of action earlier. You still have an answer to the claim narrative, but that was, it seems to be a devastating point there in pages 12, 13, and 14 of the Pelley's brief when they point out, hey, the claim narrative specifically asserted the breach here took place early on. Judge Silverman, the problem with that, though, is the very problem that we're talking about, which is when the claim narrative asserted all of those errors, errors that began in 2008, some errors that were committed in 2012 or 2013. No, it wasn't an error. It was stated as a breach of duty of standard of care, which means a breach of contract. Only if this contract was somehow divided into dozens and dozens and dozens of pieces. That's the problem. The idea that the claim narrative, which, by the way, was a document that was submitted to Cooper Carey years after this agreement was struck, that the claim narrative somehow bears on whether this document was or was not unitary, doesn't add up with the... There was an admission against interest, was it not? No, I don't believe it was at all. These claim narratives are... Isn't there a distinction between a breach of the standard of care and a breach of the contract? As I understand this going over time, that both parties are inquiring of the other. Have you met the standard of care that our contract requires? And I'm going to raise it with you and show you that you haven't met it because if you don't, by the end of the day, fix that, there's going to be a contract claim. And so it's in a period of time of saying, well, look, you've fallen short on this, you haven't done this, this wasn't to specifications, we need this to be redone. And that over time, there are going to be a lot of instances in which somebody's identifying a breach of the standard of care that is not the same as a breach of contract, per se. I think that's right, and I think the fact that the parties... Do you think it's so right that you're sorry you didn't make the argument yourself? I believe I did make this argument in this way. I don't think you did, counsel. I did make this argument because at Section 5 of the agreement itself, it provides for the very iterative process that Judge Pillard is talking about. It provides that if there is an error identified, or as the claim narrative puts it, a breach of the standard of care, that's when the parties... You never responded to the claim narrative argument at all. Judge Silberman, that's because the claim narrative, because it arose years after the contract, because it is a document that is the standard exemplar to use when you get to the end of a project, when the project is substantially complete, and there remain either errors that were unremitied or costs that have not yet been paid, this is the document that you create. The idea that using the word breach in the claim narrative somehow means that this agreement that Hensel Phelps stepped into in 2010 becomes a divisible agreement is not supported by any case that I have ever come across in preparing for this argument. It doesn't have to be divisible. Judge Silberman, respectfully, it does. The issue is whether this contract is unitary or divisible. If it's unitary, the time has not run. If it is divisible, it is not. And all of your questions, whether they go to the claim narrative, whether they go to the nature of the party's agreement within the contract, whether they go to the method of resolving disputes that come up during the course of this project, all the way through to completion of construction, all of those are just different ways of asking this core question, whether this contract is unitary or divisible. So is it your position that if the contract is unitary, then there is no language that the parties could put into the contract that would require some earlier action? I think, Judge Brown, that's akin to the question that Judge Silberman posed earlier. Well, it is, because I'm trying to get at the same thing. Yes. If the contract is unitary, it by nature can't provide for an earlier cause of action to arise. And that's the difference that we've also been discussing between an error, a default, a breach of the standard of care, and an action for breach of contract. And by the way, this is something that even Judge Leon understood. Judge Leon, whom we are appealing and with whom we disagree in many other respects, understood that when you have a unitary contract breach, actionable breach, it doesn't happen until the end of that contract, until April 1st of 2014. Well, earlier I thought that you agreed with Judge Pillard that often when we're trying to figure out what's going on in a contract, one of the things that we say is, oh, if only they had specifically anticipated this and put that language in the contract, right? But now, if I understand what you're saying, it's that once you are into this paradigm that is the unitary contract, nothing that the parties want to do can ever take you out of that. Well, I think here's how I would bridge those two questions. The first is, you know, every if only post hoc situation gives rise to the kind of contract interpretation case that we're talking about here. That's why contract interpretation cases, I think, exist. I took Judge Pillard's question and observation to be that if the parties had intended for the contract to be divisible, they could have structured it in a different way. If the parties had intended for it to be unitary, in addition to making it for a single project, in addition to making it through completion of construction, in addition to making it a lump sum, and in addition to it being a single document, they also could have said, for example, at the end, we intend that this contract be unitary. That would have been terrific. That would have saved us all a lot of time. They didn't. So what we're left to fall back on are the sorts of factors that the D.C. courts instruct you to look at when you're trying to determine whether this single obligation can be sliced into dozens and dozens of different statute of limitations or whether it's one that stems from substantial completion. If I could spend just a minute on indemnity, I'd appreciate it, because this is a separate issue and a separate statute of limitations. Let me just ask you, if you were to prevail on your unitariness claim, do we need to reach the indemnity claim? No, you do not. If we prevail on the unitary contract claim, all of these breach of contract claims are timely, and I think that the parties and even Judge Leon would agree on that. On indemnity, here is the problem I think that the panel has to confront. What Judge Leon held in his opinion was that this broad indemnity clause only applied to third-party litigation. He says it twice in his opinion. Not even Cooper Carey is defending that on appeal. What Cooper Carey is now saying is, yes, the indemnity provision applies to third-party claims, but Hensel Phelps's claims are first-party claims. They are not. Hensel Phelps's claims, roughly about 7.2 million of the 8.5 million, are third-party expenses, and that's where the claim narrative actually has great utility, Judge Silverman, because if you look at the claim narrative, you see a detailed recitation of every single payment made to every single third-party contractor resulting in those claims for indemnity. Those payments, by the way, were not made until 2012 and 2013. So if you reach the indemnity issue at all, finding number one has to be that Cooper Carey agrees that it applies at least to third-party claims, and that takes care of over $7 million of the $8.5 million that we're talking about. Finding number two has to be with respect to the small amount of claims, expenses that Hensel Phelps itself incurred, so expenses for additional overhead, administration, additional time spent on the project that they hadn't budgeted for, all of those things. You will look in vain in this indemnity provision for any kind of limitation on first-party claim. The indemnity provision, it's actually hard to imagine a provision that could contain more broad phrases than we're all familiar with. Your first point, with respect to the damages that Hensel Phelps suffered, you say they're a third-party because they involve costs that Hensel Phelps had to pay other people to fix. Yes, yes. Well, that would be true in any first-party claim, isn't it? Isn't that true? I think the difference that I would draw, to the extent there is a difference between first and third-party, is with respect to that over $7 million of costs, these were expenses that were charged to Hensel Phelps by the cement contractor, by the fire extinguisher contractor, by all of the contractors that are listed in the statement of claim. That does not answer my question, though. I was trying to think about what would be the, let's suppose there was clear distinction here between first and first-party claims. Wouldn't all first-party claims involve some costs that would go out to third parties? No, I think it's, I think it is. Aren't you confusing the situation here? Well, I think there is probably a way, and this is, of course, not something that Judge Leon got into because he concluded this only applies to third-party allegations. This is all de novo, isn't it, counsel? Absolutely. I know. So attacking Judge Leon's opinion doesn't help you necessarily up here. No, I mention it only because Cooper Carey has agreed with us on this third-party point. Your question, though, about whether, or the dividing line between first and third-party claims, the first-party claims such as they are that we would identify are expenses that Hensel Phelps itself incurred as a company, so the administration and the overhead. Your question, though, I think is, even those expenses presumably were paid out to someone or something, a Hensel Phelps employee. Exactly. So if you take that broad reading, then the expenditure that Hensel Phelps is still making is a third-party expenditure because it's paying someone else. Another way of looking at it is all first-party claims involve some kind of third-party cost. And that's just puzzling because then what's the function of an indemnity clause as distinct from breach of contract? There has to be some limiting principle. I'm not sure. Well, there is certainly one limiting principle, and only one, in this indemnity provision, and that's the principle that comes at the very end, which says you can't be indemnified if you yourself are negligent. And you do have cases, and we cite them in our brief, involving situations where an indemnity was negligent and still got paid. But that would be true about the basic claims, too. I'm not sure that it would be true for the basic claims, but I think the distinction is... Well, it would be if, in fact, the facts were different in this case, that it was Hansel Phelps that was largely responsible or partly responsible for ignoring the fire department, then their negligence would cut against any claim, right? I see what you're saying, and I think in a comparative or contributory negligence regime, maybe that would cut against their claim. The point I thought that Judge Pillard was making is what's the limiting principle in this indemnity provision? That's the one. Everything else in this particular indemnity provision, you can imagine it being written a different way. And, in fact, many of them are written a different way. But this indemnity provision says, among other things, to the fullest extent permitted by law, any and all claims, costs, expenses, damages, liabilities, as a result of or as a consequence of, including but not limited to. You can't find another broad phrase that's not in this indemnity provision. I think what I'm asking is, isn't there the principle limitation is in the very concept of indemnity? And I'm trying to understand, if you said, here's a contract, I'm going to do this, I'm going to build a building for you, and it's this two-sentence contract, and I'm going to indemnify you for any harm by people that I bring in to build the house, and they have different statute of limitations. You typically would think that the indemnification is about, you know, somebody comes in and, you know, runs over your dog on the way in. I mean, you don't typically think of it as something that swallows or almost swallows or substantially overlaps with the breach harms. Right. You don't typically think of it that way. But even in your question, Judge Pillard, one of the things that you said was, I'm going to identify you if someone comes in and during the course of the project does harm. Many of the indemnity provisions that we see involve that kind of limitation. I will indemnify you if a third party files a claim against you or submits an expense report to you or requires you to pay out a liability. But the First Circuit in the case that we cite in our opening brief was presented with a really similar issue. A case came up to the First Circuit. The district judge said an indemnity provision can't possibly cover a first-party indemnity. That's not what an indemnity provision is. And what the First Circuit said is indemnity just means you're paying somebody back for something. And if the indemnity provision is written in such a way that it doesn't exclude first-party claims, first-party claims are contemplated within the indemnity provision. So you can, of course, in response, Judge Pillard, to your earlier question, you can get at this entire case by resolving it on that first statute of limitations unitary contract question. The indemnity question only comes up then in the circumstance where... What are the, excuse me, what are the damages that wouldn't be included by the indemnification provision under your theory? Under our theory, the indemnification provision, because it is so broad, likely contemplates all of the damages that we sought. But the reason I say... All the damages. The reason, yes, the reason I say likely contemplates is because there are damages arising from things like, and you see this at the very end of the claim narrative, general and administrative expenses, profit markup, those types of damages which are calculated based on the other expenses. You could see those as being, you know, one step removed from a third-party expense. However, all of those, of course, are damages. So therefore, the indemnification clause is your total, its purpose is your total relief against the architects. That's the purpose of it. That's the total relief against the architects if they do any breach. This indemnification clause, the short answer is yes with one qualifier, and that's the qualifier that if Hensel Phelps is negligent, it can't recover. Of course, that would be true under any circumstances. But this indemnification clause provides for total relief because of the way that it's written. So that's the total damage clause. That's the total damage clause for the contract. Yes. Of course, Judge, the way that Judge Leon's opinion approached the issue, he dealt with it just in terms of third-party litigation. So this question about whether there... In other words, in answer to Judge Pillard's question, there is no principled limit to this indemnification clause. Judge Soberman, the limit to the indemnification clause is the... Is only your own damage. Is the one that's baked into it. But that doesn't mean you just said there's no principled limit. No. That doesn't mean it's... That was Judge Pillard's question, was there a principled limit on this indemnification clause. Well, the answer is that the indemnification clause is as broad as you can write it, to the fullest extent permitted by law, and so on and so forth. The final meaning of a contract, where the whole damage provision is in the indemnification clause. Well, the reason I think that it poses such a conundrum here is because, of course, the indemnification claims arose in 2012 and 2013. If you look at the claim narrative and all the documents attached to it. So the time bar issue that is present, or so the district court said, with respect to the first breach of contract claim, doesn't exist with respect to the indemnity claim. If we are right, though, on the breach of contract claim, that it didn't start running until substantial completion, you don't need to reach the indemnity issue at all. Well, of course, if you're wrong on the breach of contract claim, then you pour the whole breach of contract claim into the indemnification claim. That's correct, because of the way that this particular indemnity provision was written. Yes. It could have been written another way, but it was written in such a way as to contemplate all of these damages. All right. If there are no further questions, thank you, Your Honors. Good morning, Your Honors. May it please the Court. You can raise that instrument, whatever the hell you call it. I appreciate that, Your Honor. My name is Jonathan Shoemaker, and I represent Cooper Cary in this matter. The district court properly dismissed Hensel Phelps' stale claims for breach of contract and indemnity, and in so doing, enforced the settled law of the District of Columbia and honored the party's bargain floor expectations. Cooper Cary asked this court to affirm the district court's ruling. The first issue on appeal deals with the statute of limitations, and I think you understand our brief clearly. The statute of limitations question begins with the statute of limitations language itself, which in this particular instance is instructive. The D.C. statute of limitations required that Hensel Phelps file a complaint for breach of contract within three years, quote, from the time the right to maintain the action approves. The issue on appeal is simple. When did Hensel Phelps have the right to maintain a cause of action for breach of contract against Cooper Cary? We argue, consistent with the law of the District of Columbia, that Hensel Phelps had the right to maintain a breach of contract at the time of first breach, in October of 2010, when the preliminary documents were first adopted as part of Hensel Phelps' contractual obligation. What do you take to be the response to your colleague's argument that the key to this case is whether it's unitary or divisible, the contract, that is? Respectfully, I disagree entirely. The D.C. Court of Appeals has never recognized the distinction between unitary or divisible contracts for the purposes of accrual of claims for statute of limitations purposes. All of the cases cited that have discussed any type of distinction do not come out of the D.C. Circuit. Sorry, the D.C. Court of Appeals. The D.C. Court of Appeals has a general rule, which is that breach occurs at the first breach, and that's the capital-placed case. But it seems like it's almost tautological. If you're saying that the contract can be and was breached such that a claim accrued before substantial completion, that's another way of saying that the contract isn't unitary, and that's your position. So your position is that it's not a unitary contract, at least if you want to be talking to rather than past one another, the parties, right? So whether you call it divisible or whether you say a claim accrued during the building and design and building of the building, it's the same thing. That's correct. The D.C. Court of Appeals, however, has expressly addressed a unitary contract and concluded that the existence of continued contractual obligations under a contract does not postpone the accrual of a claim for first breach purposes. That's the case of Wright v. Howard University. Counsel, you're right. Your response to Judge Pillard was not yes, it was no. You just explained why, under D.C. law, it could be unitary, but it also could be an earlier cause of action. Absolutely. So you shouldn't have answered yes and then no. I apologize. It doesn't matter whether the contract is divisible or unitary for the purposes of accrual for a claim under a contract in the District of Columbia. And you're claiming that the Howard University case dealt with a unitary contract but that there was a claim that accrued before? Whether the contract was unitary or divisible, in the Howard University case it dealt with a tenure-track professor. And so there is no divisible component to it. I was using it by analogy because they've been arguing this unitary theory and in the Howard University case the professor alleged in the complaint that the breach occurred when Howard University failed to conduct a tenure review. Right, but that's a very different circumstance, and I think the notion of a unitary contract isn't even raised in that case. The other Howard University case seems more relevant, which is D.C. Court of Appeals, Howard University v. Durham, which does talk about the factors that determine whether a contract is unitary, one being, is there a single agreement? Second, is there a single consideration? And the third, it seems to me, is what is troubling because there are these phases in this contract, and I do see that as potentially creating different moments when you have to kind of look back and assess and say, do we have any breach and are we going to sue before you move on? And I take that to be your argument. But one of the things that the Howard University v. Durham case says is that the third factor is basically the contract has to be divisible and there's compensation given for something being completed. And here the compensation is being given monthly and phase one is not all sort of paid, signed, sealed, and delivered. It's a more rolling and not matched up set of exchanges. But that Howard University case that distinguishes between unitary and divisible is not an accrual case. It just talks about different types of contracts and whether or not his resignation as a dean also was the equivalent of a resignation of his tenure as a professor, as a tenured professor of the faculty. And that did not address accrual provisions, which takes me back to the original point, which is the D.C. Court of Appeals has but one rule for the accrual of breach of contract claims, and that is first breach. And unless at the outset... But that again seems a tautology. First breach that begs the question, was it a breach? How do we know? Somebody's fallen short of the standard of care. It cannot be in a construction relationship, design and construction, which takes place over years and is extremely complex, that every time one party falls short of fulfilling its standard of care, a contract claim accrues. It cannot be. Respectfully, that's what the D.C. Court of Appeals has said. And the question is... Where? Your best case. The best case is Capital Place. And where it says that in Capital Place, it's in the context of a construction contract where a contractor has until the completion of the project to deliver the project in conformity with the contract documents. And so Phelps' argument is that in this particular case, the design documents were not... And that's from their reply brief on page 5. They finally synthesized the argument. The time for delivery and acceptance of the design documents was not until substantial completion. And that's contrary to the terms of the design agreement, which is inevitably contrary and different from a construction contract, which called for the design to be delivered in phases. The preliminary phases and the preliminary design documents were delivered to the owner and, in fact, accepted as is without a representation from Hensel Phelps when they agreed to assume the contract. And how much... It sounds like a bit of your case rests on the fact that Hensel Phelps took something over and took it over as is. They basically are given, here's some documents, and it's on them to say, well, do their due diligence and say, is this up to code? Does this have the... That is an issue that, if this were to be remanded, would be certainly a point of contention. But that's not... You're not sort of saying this is like design-bid-build as a result of that. As a result of that. No, look, this contract was a design-bid-build contract at the time that it was formed. This contract was never contemplated as being a design-build contract, and even the AGC amici recognized that if this was a design-bid-build contract, which it was at the time of formation, that we would prevail and Hensel Phelps would be wrong. In this particular instance, when Hensel Phelps took over the preliminary documents, they didn't agree to accept delivery of the final construction documents at substantial completion. Article 3 of the design agreement includes a specific schedule of services to be provided. And that schedule of services included the provision of final construction documents, which, according to their claim narrative, were delivered on April 13, 2012, more than three years before the lawsuit was filed in this matter. But that doesn't matter. The point is that Hensel Phelps had an obligation to take those final construction documents and then deliver them to the owner for the owner's review and approval, and take those final construction documents and get those final construction documents permitted before they could actually erect the building itself. And so all of the construction documents, the final construction documents, which under the construction contract itself became a contractual obligation for Hensel Phelps to meet well before substantial completion, occurred earlier than substantial completion. Is it your position that there are five times corresponding to the five stages when breach could occur, or that there are infinite times? How many moments of claim accrual? One. First breach. No, no, because there are going to be breaches that happen after that. Well, there could be additional breaches that occur after that. And then what happens to those? Do you have to amend your complaint? Are you bringing your suits? Well, isn't there a case on that? I seem to recall a case somewhere where a court pointed out that the cause of action accrues at the first breach, and then subsequent breaches can be covered in the same cause of action.  And that's, I believe, the Colbert case, which says all you need to know is have the fact of injury. You don't need to know the full measure of their damages. And that's really what Hensel Phelps is arguing is we didn't know the full measure of our damages until substantial completion. So although we knew that the breach occurred, we knew, and it's undisputed in the claim narrative, that the breach occurred in March of 2011. They then bore the cost and immediately, according to the claim narrative, began making changes in the field and implementing and incurring additional costs, which they were tracking, and there's correspondence cited in our brief, that they were tracking the costs associated with these issues as early as early 2012, and that their position is that they were obligated, taken to its logical conclusion, that they didn't have a right to file a lawsuit. And that's what the statute of limitations says, is that when you have a right, and the first question is you file, and then you have a variety of options. If you're up against the statute of limitations and you file immediately, you can seek a stay if you believe this is a complex construction project. Before filing suit, you could seek a tolling agreement that could be drafted in 36 seconds. Or more fundamentally, as a sophisticated contractor, knowing the complexities of a construction project, you could negotiate to have an accrual provision in your contract itself that calls for the accrual of claims at substantial completion. And as noted in our brief, this is a very type of clause that has been negotiated in the construction industry for over 30 years. Hensel Phelps chose not to insist upon such an accrual provision, and in so doing, accepted the risk. They're a contractor. Who better than a contractor to use contracts to manage their risk? Hensel Phelps's position is also, as you noted earlier, contrary to the terms of the design agreement. The parties did contemplate the possibility that litigation could occur during the project. And respectfully, I don't believe that the provision, which is Article 7.09.5, could be read as relating to any type of litigation other than litigation between the parties. The entire section, subsections 1, 2, 3, and 4, all address the stepped dispute resolution procedure that take place between the parties. But that's a mediation process, and I find that to be wholly compatible with Hensel Phelps's position because you have an ongoing process. You want to work out whose obligation to do what until we can get it done. We're going to mediate, and we're going to figure out, are you going to do this, or is this going to require a change order? Is this under the existing contract or not? Do that kind of dispute resolution, and then if you don't, if you can't resolve it, there's going to possibly have to be litigation. But you don't even know whether there's going to have to be litigation because a lot of the things that look terrible when a relationship is ongoing get fixed. So it seems, I mean, the argument that seemed compelling to me in the Association of General Contractors agency brief is that it seems to sort of create a lot of need to file cases that might be unnecessary to have the first breach rule. The first breach rule, as we've articulated, has been the law in the District of Columbia for decades, has been the law in the Commonwealth of Virginia and Maryland, and the courts are not flooded with these types of claims. Owners routinely seek to modify contractual provisions and manage these risks. It's common to enter into tolling agreements, and as it relates to the stepped dispute resolution process, there's certainly always the opportunity for the parties recognizing the complexity of a project to say, gee, instead of fighting about this in court, let's put a pin in this and move forward. But the dispute resolution procedures does not call for putting a pin in it automatically. There is no automatic tolling provision that was contracted as part of this design agreement. So as a consequence, the parties, as a final dispute resolution procedure, referred to litigation, and they contemplated the possibility that whatever the issue was, it would not in fact be resolved prior to the substantial completion of the project, and they foresaw the possibility that there could be litigation. Indeed, and foresaw that with litigation, there would still be the obligation to continue to comply with the contract. Absolutely. Even while litigation was ongoing. Absolutely. And that's why we come back to the first breach rule and the discovery rule. The discovery rule, the D.C. Court of Appeals, and this court is, of course, tasked with applying what the law is, not what the law should be, but the D.C. Court of Appeals has used the discovery rule as an outside time frame for discovery. That would take you to March 11th. March of 2011, correct. And here, even the AGC amici, in advocating for adoption of Hensel Phelps's position, acknowledged that they were advocating for what the law should be, not what the law is, which is accrual at first breach or at the absolute latest discovery. Accordingly, we ask that the court affirm the district court's ruling on the breach of contract action. As it relates to the indemnity second count, the court need not reach this second issue because Hensel Phelps did not appeal the district court's conclusion that the indemnity claim, like the breach of contract claim, was barred by the statute of limitations. And I would note that part of the reason behind that is logical. It's the exact same claim. I would refer the court, if you're looking for some guidance on this issue, to Hensel Phelps v. Thompson Masonry, a case from November of 2016, where Hensel Phelps attempted to make the same type of argument to the Virginia Supreme Court. And they said, you can't recharacterize an indemnity provision or a breach of contract claim as an indemnity provision. But if the court were to reach the indemnity provision as a third-party claim, it should affirm the district court's proper application... I want to make sure I understand your argument on this. The argument that Hensel Phelps did not appeal the determination. Which is it that you're saying they did not appeal? Hensel, in the initial motion to dismiss or alternatively motion for summary judgment, we moved to dismiss the indemnity claim on two separate grounds. First, because the indemnity provision did not apply to third-party claims, which is the issue that... or first-party claims, which is what they did appeal. And second, because the indemnity claim, like the breach of contract claim, was barred by the applicable statute of limitations. Now, the problem there, is it clear whether the district judge had a rule on that issue? I believe that it is. The district court's memoranda opinion specifically says that the... identifies in footnote one that the only two issues that were not reached related to two different theories of no damages being pled. But so then, your position is he necessarily reached the other issue, but he never said anything about it. Your Honor, the district court... Larry Orshel, I'm talking about the statute of limitations. Yeah, the district court entered an order granting the motion for summary judgment and the only carve-out of that grant was the two issues that were not reached. So you think necessarily he had to rule in favor of that which he did not carve out. Well, and I believe actually the opinion itself did expressly carve it out. As Judge Leon explained... You mean carve it out? Sorry, that Judge Leon expressly addressed it. In the opinion, Judge Leon articulated our motion as follows. Cooper Carey argues, inter alia, that Hensel Phelps' claims, thorough, are time-barred and as to the claim, singular, based on the indemnification clause, Cooper Carey moves for the additional reason that the agreement plainly does not apply to this factual situation. So in the outset, when he's framing his opinion, he identifies there are claims, plural, that we have moved on timeliness grounds and that there's an additional ground for the indemnity provision. And so therefore, and the analysis, if you look at his analysis, is much akin to the question that you asked earlier, is that really there is no distinction in Hensel Phelps' mind between the two types of claims. So the analysis is the same. And that issue was not appealed. Hensel Phelps does not contend that they appealed the issue. And so therefore, we don't believe that the second issue on appeal need be reached by this Court. Let's assume it is reached. If it is reached, we believe that this Court should apply the same canons of contractual construction that the District Court applied to correctly conclude that it only applies to third-party claims and not first-party claims. The first rule of contractual construction we believe must be applied is the whole agreement rule. That is, contracts should be interpreted to give meaning to all of the provisions in the contract. Here, the indemnity provision includes two duties, a duty to indemnify and a duty to defend, conjunctively. And the duty to indemnify and the duty to defend all relate to the same defined categories of claims, capital C claims, which include any claim, judgment, lawsuit, damage, liability, and costs and expenses. So that's capital C claims, and you must be able to both indemnify and defend against it. It makes no sense to defend against your claim against yourself. Absolutely. It's an impossibility. So the only way to read it is as a third-party indemnity to give meaning to the defend obligation, which Hensel Phelps deprives of meaning in its entirety. The other provision I would refer the court to is further down in Article 6.1, the indemnity provision, which discusses that in the event that any such capital C claims are made, asserted, or threatened against any indemnities here under, there are a variety of self-help remedies available to the indemnities. Elsewhere in the design agreement, specifically Article 4.06 on page 25 of the Joint Appendix, there are the self-help remedies that Hensel Phelps has in the event of a first-party claim. So what do you make of all these other provisions that talk about anticipating a reasonable number and variety of revisions in the services under the contract, that the parties are going to work together to develop value engineering suggestions, adjustments in the scope. There's all these sort of open-ended undertakings to work together. So your view is basically you have a first time that your counterparty falls short of the standard of care in the contract or of the obligations of the contract. You file a lawsuit within three years of that, even if the contract's ongoing, and you kind of add claims to your, or you toll it or whatever. You kind of add to the litigation file as you go along. And then at the end of the day, you go back through that with your lawyers and you say, well, actually, that got dealt with, that got dealt with, that got dealt with, and these two didn't, and then you proceed with the litigation? Respectfully, that's what D.C. law is, is that you file within three years from the first breach. And the difference between the construction, and I apologize if I wasn't clear before, the difference between the construction contract claims and in reading Judge Leon's opinion, there was this repeated emphasis that he even held that unitary contracts mean something. The word that kept getting omitted from Judge Leon's opinion is the word construction contract. And there's a difference between construction contracts and design agreements, which has been recognized, and that is that in a construction contract, a contractor has the ability to correct defective work until such time as they are scheduled to deliver the work without being in breach. A wall, when it's getting built, is not in conformity with the entire requirements of the contract until it is completed. The design documents, however, cannot be cured after they've been put into the field to avoid damages. Hensel Phelps's position, in essence, is that while there are provisions that require correction of deficiencies and performance of that, that Cooper Carey did not have the ability to revise the preliminary design documents to avoid subsequent damages to the tune of $8.5 million, whereas the construction contractor cases that are at issue, the contractor has until the substantial completion of the project to remedy any deficiencies. One of them, you're dealing with designs that are put into the field, and once they're put into the field, they can only be revised after there's a problem that gets discovered. Not necessarily. I mean, it seems like you could do something that, you know, the design was wrong and you could make it good. Workarounds happen all the time. In this particular situation, Hensel Phelps couldn't find a workaround that cost less than $5.5 million, and their position is that they had to carry that $5.5 million and that the D.C. law, D.C. statute of limitations, did not afford them a remedy for that $5.5 million until the substantial completion of the project, which doesn't make sense at all. Does that address that issue? I think so. Thank you. As it relates to the indemnity provision, the indemnity provision also relates to, and I'm sticking with the whole agreement rule here, that claims must be capable of being made, asserted, or threatened against the indemnities, and obviously Hensel Phelps cannot make, assert, or threaten claims against itself. So in order to give meaning to that language in the indemnity provision itself, you have to construe that as a third-party indemnity. We also believe that the canon of the plain meaning rule applies here. That is, of course, where the language has a generally prevailing meaning. It is to be interpreted in accordance with that meaning. And here, indemnity does have a generally recognized meaning as applicable to third-party claims. That's what the landmark court held when they cited to CJS, saying an indemnity provision generally does not apply to claims between the parties to the agreement, but obligates the indemnitor to protect the indemnity against claims brought by third parties. And that's not just the general understanding writ large in the law, but it's specific to the construction industry. The leading construction law treatise, cited extensively by Hensel Phelps throughout its briefs, thought so little of the concept of first-party indemnity provisions that this is what they described. Once in a while, an indemnity will become particularly inventive and attempt to claim that the indemnitor's obligation to indemnify it against, quote, all claims includes the indemnitor's own claims against the indemnity. The leading construction law treatise recognizes that in the construction industry, the argument that all claims covers first-party claims is a particularly inventive argument, and that's what we have here is a particularly inventive argument. Accordingly, we believe the only way to give meaning to all of the words in the indemnity provision, as well as the rest of the design agreement itself, is to construe it as applicable to third-party claims, not first-party claims. And therefore, we ask the court affirm the district court's ruling. All right. Thank you, Mr. Shoemaker. Ms. Stetson had no time left. We'll give you two minutes of rebuttal time. Thank you. I appreciate that, Judge Brown. A few quick points. The first is with respect to D.C. law, the case that Mr. Shoemaker did not identify that actually contains the statement of D.C. law is Aaron Haft v. Price. It's the case we cited in our opening and reply briefs, 483A2-1192. This is the case that says a breach arises from the date of completion. The statute of limitations begins to run when a contract is complete. The capital place case, of course, involves the discovery rule, which only comes into play if there's a latent defect after the contract is complete. Aaron Haft v. Price is the D.C. rule. That is the rule that we're asking to be applied here. It is also the rule that applies no matter whether the contract is labeled a construction agreement or a design services agreement. You can imagine a divisible construction contract. You can imagine, as in this case, a unitary design services contract. The thing that you look at isn't what it's called. You look at what it contains, and if the contract contains provision for a full course of performance through completion and construction of the project, payable by a lump sum, it's a unitary contract. That is this case, and that means that the statute of limitations did not begin to run until April of 2014. On the indemnity issue, first of all, rather than define from what Judge Leon didn't say an intention to rule on something, I suggest we look at what he did say. With respect to the indemnity, what he says at Joint Appendix 370, I have concluded that Hensel Phelps' claims based on design errors are time-barred, and the indemnification clause refers only to Hensel Phelps' prospective liabilities in third-party litigation. That's Joint Appendix 370. Joint Appendix 378, Hensel Phelps is time-barred from bringing its breach claim. Joint Appendix 380, reading the indemnification clause in the most obvious way, it requires Cooper Carey to cover Hensel Phelps' liabilities when and if a third party sues over problems caused by Cooper Carey's fault, which, by the way, Mr. Shoemaker is not defending. Nowhere in those holdings, not the statement of Cooper Carey's argument, not the footnote pertaining to an entirely separate argument, nowhere in those holdings did Judge Leon ever say, oh, and by the way, the indemnity claims are time-barred also. The reason is that he couldn't. The indemnity claims arise from when the expense is incurred. And if you look at the claim narrative and you look at the many, many exhibits to the claim narrative containing the many payments made to the many third-party contractors that Hensel Phelps had to compensate, what you will see is that all of those payments were made circa 2013 and 2014. That's why that claim wasn't time-barred. This is the first time you've embraced the claim narrative? I don't think it's the first, but certainly with respect to rebutting the argument that there was some holding that didn't exist, I'm very happy to embrace the claim narrative. I see. With respect to this idea that the indemnification clause is referenced to duty to defend somehow shrinks the rest of those words to apply only to third-party claims, the duty to defend and the duty to indemnify are two different things. They come up in two different contexts all the time. You don't defend against a claim for an expense that a cement company submits to you. You pay it. You don't defend it just because it's not litigation. It doesn't mean that somehow this indemnity clause only applies to that. So too with this idea that where there's a claim made threatened or asserted, what that sentence actually says is if any such claims are made threatened or asserted, then you have to make certain provision for that. That means in the context of a third-party expense submission, certain things have to be followed, but that doesn't rule out the possibility of a first-party expense. And all of this dialogue about what that indemnification clause does and does not cover obscures the fact that Mr. Shoemaker apparently concedes that over $7 million of the $8.5 million, or maybe the whole nut, actually is a third-party expense. That is our argument. He didn't refute it. We think it should be reversed on that alone and sent back. All right. Thank you. Thank you. The case will be submitted.
judges: Brown, Pillard, Silberman